JUDGE LINDSAY
delivered the opinion oe the court.
In the year 1866 Spencer Scott, who was then the owner of one hundred and seventy shares of the capital stock of the Second National Bank of Louisville, and who was largely indebted to the National State Bank of Newark, New Jersey, delivered to said last-named bank as a security for his indebtedness the certificate of his ownership of the stock in the Louisville bank. At the time of the delivery he signed the blank form of transfer printed on the back of the certificate. He afterward borrowed other sums of money on the faith of this security; and finally the Newark bank, pursuant to its authority in the premises, filled up the printed form of transfer, which now reads as follows:
“For value received I hereby assign and transfer to the National State Bank of Newark, New Jersey, all the shares of the within mentioned stock, and do hereby constitute and appoint V. Rose attorney to transfer the same on the books of the bank.
“"Witness my hand this 3d day of October, 1866.
Spencer Scott.
“Attest: Richard Schell.”
In March, 1868, Rose, the attorney, applied to appellant to be allowed to make the stipulated transfer; but permission was refused, upon the ground, as claimed by appellant, that it held a lien on the shares of stock so transferred to secure the payment of certain indebtedness from Scott to it. Subsequent to all this Scott filed his petition in the District *374 Court of the United States for the District of New Jersey, and was adjudged a bankrupt, and upon final hearing was discharged from the payment of all debts provable under the bankrupt act.
To this proceeding appellee was not made a party. It was not reported as a creditor of Scott, nor was the bank-stock in its hands reported as part of the estate of the' bankrupt. So far as this record shows it had no notice of the proceedings in bankruptcy .further than may be implied from the publications made pursuant to sections 14 and 29 of the bankrupt act.
In May, 1870, appellee brought its suit in equity-in the Louisville Chancery Court to compel appellant to transfer upon its books the shares of stock named in the certificate in accordance with the assignment on the back thereof, and to account for the dividends that had accrued on such shares of stock subsequent to the 3d day of October, 1866.
As matter of defense appellant avers want of knowledge or information as to Scott’s indebtedness to the Newark bank and as to the assignment or transfer of the certificate of stock. Both these facts are satisfactorily established by the evidence in the case.
It is also intimated that the arrangement between Scott and the appellee was fraudulent; but as there is no direct or specific charge of fraud, the argument of counsel touching said intimation need not be further noticed.
Appellant alleges that in 1866, when the transfer of the certificate of stock is claimed to have been made, and at all times after that date and up to the filing of Scott’s petition in bankruptcy, he was indebted to it in an amount greatly exceeding the value of all the stock standing on its books in his name, and that under and by virtue of its articles of association and by-laws it held a lien on said stock to secure the payment of all deb.ts due and owing by Scott. It also *375 alleges that it appeared in the bankrupt court and proved its said debts and asserted its lien, and that it was recognized and upheld by that court. And further, that by agreement with the assignee it was allowed to .retain all the stock standing in Scott’s name by crediting its debts by the agreed value thereof, and that this arrangement or agreement was reported to and approved by the court, and therefore that it holds the stock entirely freed from the claim of appellee or of any one else.
As a second general ground of defense, appellant insists that the discharge granted to Scott extinguished appellee’s debts, and that as a necessary result its security was also extinguished; and it also claims that by reason of appellee’s failure to appear in the bankrupt court and assert its lien it has forfeited all right to hold the stock as security for its debts, and that it can now have no relief at the hands of a state court.
The claim of the Louisville Bank to a lien on the stock under and by virtue of its articles of association or by-laws can not be maintained. This question is settled beyond all controversy by the two cases of the Bank v. Lanier (11 Wallace, 369) and Bullard v. Bank (18 Wallace, 589). No banking association organized under the national currency act of 1864 can create or hold such liens.
If therefore appellant can hold the stock under a claim of title in itself, it must have acquired its title independent of such supposed lien. Its claim of ownership must be supported by its contract or agreement with the assignee of Scott or by some order or judgment of the bankrupt court.
An inspection of the record of the proceedings had in the bankrupt court in the matter of Spencer Scott develops the fact that said court did not sell or attempt to sell the stock in controversy, and did not, directly nor indirectly, determine that appellant’s pretended lien on such stock was valid and enforceable. The assignee reported to the court that the *376 Second National Bank of Louisville claimed a lien on this as well as all other stock standing on its books in the name of Scott, and that its debts against the bankrupt amounted in the aggregate to more than the value of all such stock.
Upon the filing of this report the register was directed to ascertain the validity and amount of all claims against the estate of the bankrupt, and how much they or any of them should be reduced on account of the creditors holding securities of any kind.
The register ascertained the amount of appellant’s claims and deducted thei'efrom the value of certain bank-stock, including the stock in controversy, because, as he said, “said bank claims a lien under their by-laws” on such stock. Upon reading this report the court ordered that it be confirmed and approved in all things, and that the assignee should proceed to settle and distribute the bankrupt’s estate upon the basis suggested by the register.
The validity of appellant’s pretended lien was not called in question, and no order or judgment relating thereto was made or rendered. The court did not direct a sale of the stock, 'and hence appellant can not hold title to it as a purchaser from the court. The assignee, not deeming it his duty to enter into a contract with appellant, exercised the power conferred on him by the 20th section of the bankrupt act, and by agreement with appellant ascertained the value of the stock, and deducted such value from the amount of its claims against the bankrupt’s estate. That agreement was made out of court, and of course invested appellant with no other or greater title than the assignee could lawfully dispose of. The powers of that officer are in no sense judicial, and his acts bind only those whom he represents. In the sale of the estate of a bankrupt he acts only for the creditors who prove their claims, and in such matters he can conclude the rights of no one else.
Appellee did not prove its debts against Scott.' It was not *377 made a party to the bankrupt proceedings. It was not called on by the assignee or by any creditor to assert its lien on the stock in the bankrupt court. Its rights therefore were not affected by any act of the assignee.
Such being the case, the claim of appellee can not be resisted, unless by its failure to prove its debts and assert its lien in the bankrupt proceedings it forfeited a right acquired through a contract honestly made and fully and completely executed months before Scott filed his petition in bankruptcy.
It is insisted with earnestness and zeal that appellee’s interest in the bank-stock was thus lost. "We are cited to cases which seem to support this construction of the various provisions of the bankrupt act. Among others the cases of Davis, assignee v. Carpenter (2 National Bankrupt Register, 391) and In re Snedaker (3 National Bankrupt Register, 629). It is to be observed, however, that in each of these cases the secured creditor was required by the assignee to come into the bankrupt court and submit the validity of his debt and the ascertainment and liquidation of his lien to its adjudication. The courts need have asserted no greater jurisdiction in matters of bankruptcy-than that they had power to afford the relief asked; and when they assumed to decide that in cases of bankruptcy liens upon or specific claims to portions of the bankrupt’s estate must ex necessitate be enforced in the bankrupt court they were outside of the cases before them, and their decisions are not therefore entitled to the same consideration as though they had been rendered upon questions directly in issue. But, aside from this, we are persuaded that the doctrine thus seemingly announced is contrary to the spirit and intention of the bankrupt act and in conflict with the decided weight of authority.
The bankrupt act provides for the preservation of liens and securities of almost all descriptions. The bankrupt courts are empowered when called on by a party in interest *378 to ascertain and liquidate all liens and other specific claims on the property of the bankrupt, and for that purpose may compel all parties holding liens or asserting claim to any portion of the bankrupt’s estate to appear before it and submit said liens or claims to its adjudication. But because it has this jurisdiction it by no means follows that it must necessarily exercise it in all cases.
The 20th section of the act provides that “when a creditor has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt, he shall be admitted as a creditor only for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court shall direct; or the creditor may release or convey his claim to the assignee upon such property, and be admitted to prove his whole debt. If the value of the property exceeds the sum for which it is so held as security, the assignee may release to the creditor the bankrupt’s right of redemption therein on receiving such excess, or he may sell the property subject to the claim of the creditor thereon; and in either case the assignee and creditor respectively shall execute all deeds and writings necessary or proper to consummate the transaction. If the property is not so sold or released and delivered up, the creditor shall not prove any part of his debt.”
From this section it is clear that the assignee who represents such creditors as prove their claims against the estate of the bankrupt is invested with the right, independent of the sanction of the court, to release to the secured creditor the bankrupt’s right of redemption, or to sell the property subject to the claim of such creditor. If the creditor and the assignee can not agree as to the value of the property, or if the assignee entertains doubts as to the validity of the creditor’s debts, he *379 may by petition in the bankrupt proceedings have the property sold by the judgment of the court, or he may require the' creditor to establish the validity of his debt. But if he and the general creditors are satisfied that the debt is valid and that the encumbered property is not of value more than sufficient to pay it, he may' abandon all claim to such property, and leave it to be subjected by the creditor holding the lien. In such a case to ask the bankrupt court to assert its jurisdiction and force the creditor to prove his claim would not only not add any thing to the amount to be distributed among the unsecured creditors, but such a course might result in reducing the dividends to which they would otherwise be entitled.
In re Mebone (3 N. B. Reg.) it was held that it is no part of the duty of the assignee to petition for the sale of encumbered property unless he shall believe that such a sale will create a larger fund/o?’ distribution among the creditors generally than a sale made by the sheriff of the state or by the mortgagee.
In re the Iron Mountain Company of Lake Champlain (4 N. B. Reg. 645) Judge "Woodruff says, “But where no advantage can result to the estate of the bankrupt I see no reason why the court should interfere when neither the assignee nor any creditor invokes such interference, and it appears without contradiction that the equity of redemption is of no value.
After further discussion he proceeds, “"Whether the property when sold in foreclosure shall produce one half or only one fourth of the amount of the mortgage is not of the least moment. The claimants of the lien, by electing to pursue the mortgaged premises, will deprive themselves of any right to prove their debt in bankruptcy for the deficiency, and in that view it may be greatly for the interest of the general creditors to permit such election to be carried into effect and thereby enhance the dividends to be made to them.”
*380 There are numerous cases in which, upon the petition of the assignee or of a creditor, the bankrupt courts have enjoined and restrained secured creditors from proceeding to enforce their liens in the state courts or from themselves selling the encumbered property, and compelled them to submit their claims and their securities to the jurisdiction of those courts; but we are apprised of no instance in which this has been done when the debt was conceded to be valid and the encumbered property was not of sufficient value to satisfy it.
When in the exercise of the discretion left to the assignee and the general creditors' by the bankrupt act they voluntarily abandon all claim to encumbéred property, then the state courts may subject such property to the satisfaction of the creditor’s claims, and may afford him any relief touching such property as he would have been entitled to if tlie proceedings in bankruptcy had never been instituted. This court so held in the case of Payne & Brother v. Able (7 Bush, 344). It was so held by the Supreme Court of Vermont in Stoddard v. Locke (43 Vermont Rep. 574) and by the Supreme Court of Maine in the case of Leighton v. Kelley (4 N. B. Reg. 472.)
The jurisdiction of state courts to afford relief when the secured creditors are not restrained from seeking it by the bankrupt courts is distinctly recognized by the United States District Court for California In re Davis (4 N. B. Reg. 723) and by Justice Bradley of the Supreme Court, sitting as a circuit court, in the case of Goddard v. Weaver (6 N. B. Reg. 440). In said case the bankrupt court was asked to set aside a sale of property under a mortgage made by a sheriff in Louisiana. The assignee failed to show that the-act of the sheriff, who was proceeding under the state laws, would materially affect the interests ,of the general creditors, and the judge held that the bankrupt court ought not to interfere, saying, in language at once expressive and forcible, “I know *381 of no authority which the assignee has to take property possessed by a bankrupt, except as bailee, out of the sheriff’s hands without paying the debt or seeking the aid of courts sitting in bankruptcy; and if the sheriff proceeds to sell, I am unable to see any thing in the bankrupt act which renders void his acts done after the commencement of proceedings in bankruptcy.”
It seems perfectly manifest that the bankrupt courts are not invested by Congress with sole and exclusive jurisdiction over a bankrupt’s property, and that the assignee and general creditors may, if they deem it to their interest, relinquish by non-action to a secured creditor the title to property upon which he holds a lien; and when they.do so relinquish, the jurisdiction of the state courts to perfect or enforce the. title thus acquired can not be questioned.
It is just this character of title or claim that the vice-chancellor was called on to enforce in this case. By the transfer of the certificate Scott passed to appellee at least the beneficial ownership of the stock. The delivery of possession was as complete as the nature of the property pledged or sold admitted of, and the only defect in appellee’s muniment of title was the non-transfer of the stock on the books of the Louisville bank. This non-transfer is the consequence of the wrongful refusal by the bank when Rose, the attorney, applied to make the transfer in 1868. It can not therefore avail it any thing in this litigation.
Appellee’s-debts against Scott amounted at the time of his discharge by the bankrupt court to about twenty-five thousand dollars, greatly more than the value of the bank-stock he had pledged to secure their payment. These debts are proved to be genuine and valid. The bank-stock is bound for their payment. Appellant, as a purchaser from the assignee in bankruptcy, is entitled to the stock only upon condition that it will redeem it by satisfying the debts for which it is pledged. *382 It has not offered to do so, and therefore it can not complain that the vice-chancellor has adjudged that it shall perfect and recognize appellee’s title and account to it for the dividends that have accrued on the stock since it had notice of the transfer. As appellant claims to be and is the holder of all the title to the stock passed by the assignment to Scott’s assignee, Scott and his said assignee are only nominal parties to the action; and that was no reason why the vice-chancellor should not proceed to judgment, they being properly in court upon constructive service of process.
The judgment appealed from is affirmed.